IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Texas Instruments Incorporated, <br><br>     Plaintiff, <br><br> v. <br><br> Dongbu HiTek, Ltd. <br><br>     Defendant. | Civil Action No. 2:16-cv-1458 <br><br> JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

### BACKGROUND

1. In the mid-1990s, Dongbu HiTek, Ltd. ("Dongbu") sought to enter the semiconductor manufacturing industry, though it had neither the expertise nor the technology to do so on its own. To facilitate its entry, Dongbu sought assistance and technology from Texas Instruments Incorporated ("TI").

2. After extensive negotiations, Dongbu and TI executed a series of agreements beginning in 1997 pursuant to which TI agreed to provide substantial technical assistance and license to Dongbu certain TI semiconductor technologies. In exchange, Dongbu agreed to pay TI an ongoing royalty on all products Dongbu manufactured using TI technology and sold to third parties.

3. TI has long since conveyed to Dongbu the benefits bargained for under these agreements, including providing TI personnel and expertise to help establish Dongbu's semiconductor fabrication plants in Korea, guaranteeing minimum purchases of semiconductor chips from that facility, and licensing to Dongbu five separate TI semiconductor technologies.

4. Having received the benefits of these agreements and billions of dollars in sales using TI's technology and know-how, Dongbu now seeks to discharge its own contractual obligations to TI. Dongbu has recently made a series of allegations that the Dongbu/TI technology agreements violate federal and state law of the United States and Korea, and has threatened to reduce or stop paying royalties despite its continued use of TI technology in the products it sells to third parties.

5. TI brings this action in order to obtain a judicial declaration that the royalty provisions in the Dongbu/TI technology agreements are valid, binding, and enforceable. Moreover, Dongbu's efforts to re-trade its deal with TI failed to adhere to the detailed conciliation provisions set forth in the agreements, thereby breaching the agreements and harming TI.

## THE PARTIES

6. Plaintiff TI is a Delaware corporation with its principal place of business at 12500 TI Boulevard, Dallas, Texas 75243-4136. TI is a technology company that designs, manufactures, and sells semiconductor devices.

7. Defendant Dongbu (formerly known at various times as Dongbu Electronics Co., Ltd., DongbuAnam Semiconductor, Inc., Anam Semiconductor, Inc., and Anam Industrial Co., Ltd. and collectively referred to herein as "Dongbu" unless context requires otherwise) is a Korean corporation with its principal place of business at 90 Soodo-ro, Wonmi-gu, Bucheon-si, Gyeonngi-do, Korea. Dongbu operates semiconductor fabrication plants for the purpose of fabricating the designs of other companies, known in the industry as "foundry" services.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. §§ 2201 and 2202 as a declaratory judgment action arising under the Declaratory Judgment Act, and under 28 U.S.C. §§ 1331 and 1332.

9. This Court has subject matter jurisdiction over TI's breach of contract claims under 28 U.S.C. § 1332 based on complete diversity of citizenship. The amount in controversy, exclusive of interests and costs, exceeds the sum of $75,000.

10. This Court has personal jurisdiction over Dongbu, as Dongbu irrevocably consented to this Court's jurisdiction in the Dongbu/TI technology agreements at issue in this dispute.

11. Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c), and (d).

## FACTS RELEVANT TO ALL COUNTS

### Phase 1 TAA

12. On January 28, 1997, TI entered into the "Phase 1 Technical Assistance Agreement" with Dongbu (the "Phase 1 TAA").

13. Pursuant to the Phase 1 TAA, TI agreed to provide substantial technical assistance to Dongbu in equipping Dongbu's Fab 1 with certain CMOS logic process and related technology ("Phase 1 Technology").

14. TI and Dongbu agreed in the Phase 1 TAA that it would be governed by, construed and enforced in accordance with the laws of Texas, as applicable to contracts made and fully performed in Texas.

15. The Phase 1 TAA was subsequently modified by the January 1, 1998 Phase 2 Technical Assistance Agreement between TI and Dongbu (the "Phase 2 TAA").

16. The Phase 2 TAA modified the Phase 1 TAA by adding a license to Dongbu for Dongbu to use TI's Phase 1 Technology in products sold to third parties. This license survives the termination of the agreement so long as Dongbu continues to pay royalties and does not otherwise materially breach the agreement.

17. The Phase 2 TAA also modified the Phase 1 TAA by obligating Dongbu to pay royalties for use of the Phase 1 Technology. Specifically, the Phase 1 TAA, as modified, requires Dongbu to pay a royalty equal to a percentage of the gross revenues received, less certain costs, on all products incorporating TI's Phase 1 Technology sold to third parties.

18. Dongbu's obligation to pay TI royalties under the Phase 1 TAA, as modified, does not terminate until such time as Dongbu ceases to use TI's technology in products it manufactures and sells to third parties. Under the Phase 1 TAA, as modified, Dongbu agreed that its obligation to pay royalties continues after the expiration or termination of the Phase 1 TAA, as modified.

19. Dongbu also agreed in the Phase 1 TAA, as modified, that its royalty obligations will not be reduced or otherwise affected if Dongbu uses technology that it independently develops in products it manufactures and sells to third parties, so long as Dongbu also continues to use TI's technology in the manufacture of any products made using Dongbu's improvements.

20. Dongbu has manufactured and continues to manufacture products using TI's Phase 1 Technology, and sells some of those products to third parties. As a result, Dongbu remains obligated to pay TI royalties under the Phase 1 TAA, as modified.

Phase 2 TAA

21. On January 1, 1998, TI entered into the Phase 2 TAA with Dongbu.

22. Pursuant to the Phase 2 TAA, TI agreed to provide substantial technical assistance to Dongbu in equipping Dongbu's Fab 1 with certain CMOS logic process and related

technology ("Phase 2 Technology"). TI also agreed to license its Phase 2 Technology to Dongbu. In exchange, Dongbu agreed to pay TI a royalty on certain products it manufactures and sells to third parties.

23. TI and Dongbu agreed in the Phase 2 TAA that it would be governed by, construed and enforced in accordance with the laws of Texas, as applicable to contracts made and fully performed in Texas.

24. The Phase 2 TAA contains TI's license to Dongbu to use TI's Phase 2 Technology in products sold to third parties. This license survives the termination of the Phase 2 TAA so long as Dongbu continues to pay royalties and does not otherwise materially breach the agreement.

25. The Phase 2 TAA also contains Dongbu's obligations to pay royalties for use of the Phase 2 Technology. Specifically, the Phase 2 TAA requires Dongbu to pay a royalty equal to a percentage of the gross revenues received, less certain costs, on all products incorporating TI's Phase 2 Technology sold to third parties.

26. Dongbu's obligation to pay TI royalties under the Phase 2 TAA does not terminate until such time as Dongbu ceases to use TI's technology in products it manufactures and sells to third parties. Under the Phase 2 TAA, Dongbu agreed that its obligation to pay royalties continues after the expiration or termination of the Phase 2 TAA.

27. Dongbu also agreed in the Phase 2 TAA that its royalty obligations will not be reduced or otherwise affected if Dongbu uses technology that it independently develops in products it manufactures and sells to third parties, so long as Dongbu also continues to use TI's technology in the manufacture of any products made using Dongbu's improvements.

28. Dongbu has manufactured and continues to manufacture products using TI's Phase 2 Technology, and sells some of those products to third parties. As a result, Dongbu remains obligated to pay TI royalties under the Phase 2 TAA.

Phase 3 TAA

29. On July 1, 2000, TI entered into the "Phase 3 Technical Assistance Agreement" with Dongbu (the "Phase 3 TAA").

30. Pursuant to the Phase 3 TAA, TI agreed to provide substantial technical assistance to Dongbu in equipping Dongbu's Fab 1 with certain CMOS logic process and related technology ("Phase 3 Technology"). TI also agreed to license its Phase 3 Technology to Dongbu. In exchange, Dongbu agreed to pay TI a royalty on certain products it manufactures and sells to third parties.

31. TI and Dongbu agreed in the Phase 3 TAA that it would be governed by, construed and enforced in accordance with the laws of Texas, as applicable to contracts made and fully performed in Texas.

32. The Phase 3 TAA contains TI's license to Dongbu to use TI's Phase 3 Technology in products sold to third parties. This license survives the termination of the Phase 3 TAA so long as Dongbu continues to pay royalties and does not otherwise materially breach the agreement.

33. The Phase 3 TAA also contains Dongbu's obligations to pay royalties for use of the Phase 3 Technology. Specifically, the Phase 3 TAA requires Dongbu to pay a royalty equal to a percentage of the gross revenues received, less certain costs, on all products incorporating TI's Phase 3 Technology sold to third parties.

34. Dongbu's obligation to pay TI royalties under the Phase 3 TAA does not terminate until such time as Dongbu ceases to use TI's technology in products it manufactures

and sells to third parties.  Under the Phase 3 TAA, Dongbu agreed that its obligation to pay royalties continues after the expiration or termination of the Phase 3 TAA.

35.  Dongbu also agreed in the Phase 3 TAA that its royalty obligations will not be reduced or otherwise affected if Dongbu uses technology that it independently develops in products it manufactures and sells to third parties, so long as Dongbu also continues to use TI's technology in the manufacture of any products made using Dongbu's improvements.

36.  Dongbu has manufactured and continues to manufacture products using TI's Phase 3 Technology, and sells some of those products to third parties.  As a result, Dongbu remains obligated to pay TI royalties under the Phase 3 TAA.

## Second Amended and Restated MPA

37.  On December 31, 2001, TI entered into the "Second Amended and Restated Manufacturing and Purchase Agreement" with Dongbu (the "MPA"), which modified certain terms of the Phase 3 TAA.

38.  Pursuant to the MPA, TI agreed to provide substantial technical assistance to Dongbu in equipping Dongbu's Fab 1 with certain TI logic process and related technology ("MPA Technology").  TI also agreed to license its MPA Technology to Dongbu.  In exchange, Dongbu agreed to pay TI a royalty on certain products it manufactures and sells to third parties.

39.  TI and Dongbu agreed in the MPA that it would be governed by, construed and enforced in accordance with the laws of Texas, as applicable to contracts made and fully performed in Texas.

40.  The MPA contains TI's license to Dongbu to use TI's MPA Technology in products sold to third parties.  This license survives the termination of the MPA so long as Dongbu continues to pay royalties and does not otherwise materially breach the agreement.

41.     The MPA also contains Dongbu's obligations to pay royalties for use of the MPA Technology.  Specifically, the MPA requires Dongbu to pay a royalty equal to a percentage of the gross revenues received, less certain costs, on all products incorporating TI's MPA Technology sold to third parties.

42.     Dongbu's obligation to pay TI royalties under the MPA does not terminate until such time as Dongbu ceases to use TI's technology in products it manufactures and sells to third parties.  Under the MPA, Dongbu agreed that its obligation to pay royalties continues after the expiration or termination of the MPA.

43.     Dongbu has manufactured and continues to manufacture products using TI's MPA Technology, and sells some of those products to third parties.  As a result, Dongbu remains obligated to pay TI royalties under the MPA.

Second TAA Amendment

44.     On March 31, 2003, TI entered into the "Second Technology Assistance Agreement Amendment" with Dongbu (the "Second TAA Amendment"), which modified certain terms of the Phase 3 TAA.

45.     Pursuant to the Second TAA Amendment, TI agreed to provide substantial technical assistance to Dongbu in equipping Dongbu's Fab 1 with certain TI process technology ("Second TAA Amendment Technology").  TI also agreed to license its Second TAA Amendment Technology to Dongbu.  In exchange, Dongbu agreed to pay TI a royalty on certain products it manufactures and sells to third parties.

46.     TI and Dongbu agreed in the Phase 3 TAA, as modified by the Second TAA Amendment, that it would be governed by, construed and enforced in accordance with the laws of Texas, as applicable to contracts made and fully performed in Texas.

47. The Phase 3 TAA, as modified by the Second TAA Amendment contains TI's license to Dongbu to use TI's MPA Technology in products sold to third parties. This license survives the termination of the Phase 3 TAA so long as Dongbu continues to pay royalties and does not otherwise materially breach the agreement.

48. The Phase 3 TAA, as modified by the Second TAA Amendment, also contains Dongbu's obligations to pay royalties for use of the Second TAA Amendment Technology. Specifically, the Phase 3 TAA, as modified by the Second TAA Amendment, requires Dongbu to pay a royalty equal to a percentage of the gross revenues received, less certain costs, on all products incorporating TI's Second TAA Amendment Technology sold to third parties.

49. Dongbu's obligation to pay TI royalties under the Phase 3 TAA, as modified by the Second TAA Amendment, does not terminate until such time as Dongbu ceases to use TI's technology in products it manufactures and sells to third parties. Under the Phase 3 TAA, as modified by the Second TAA Amendment, Dongbu agreed that its obligation to pay royalties continues after the expiration or termination of the MPA.

50. Dongbu also agreed in the Phase 3 TAA, as amended, that its royalty obligations will not be reduced or otherwise affected if Dongbu uses technology that it independently develops in products it manufactures and sells to third parties, so long as Dongbu also continues to use TI's technology in the manufacture of any products made using Dongbu's improvements.

51. Dongbu has manufactured and continues to manufacture products using TI's Second TAA Amendment Technology, and sells some of those products to third parties. As a result, Dongbu remains obligated to pay TI royalties under the Phase 3 TAA, as amended by the Second TAA Amendment.

Dongbu's Assumption of the TI Agreements

52.     In or around December 2004, Anam Semiconductor, Inc. ("Anam") merged with Dongbu Electronics Co. to form Dongbu Anam Semiconductor, Inc.

53.     Shortly before the merger, on March 31, 2003, Dongbu entered into a Letter of Guarantee with TI in which Dongbu absolutely and unconditionally guaranteed to TI the due performance by Anam of the obligations set forth in the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, the MPA, and other related agreements.  Dongbu further guaranteed that its obligations are an unconditional and absolute guarantee of payment and performance of the terms and provisions of the agreements between Anam and TI, including the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, and the MPA.

54.     As a result, Dongbu is obligated to make all royalty payments under the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, the MPA, and the Second TAA Amendment until such time as Dongbu ceases to use TI's technology in products it manufactures and sells to third parties.

Dongbu's Allegations that the TAAs Violate Federal and State Law

55.     In or around October 2015, Dongbu approached TI and alleged that the royalty provisions in the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, the MPA, and the Second TAA Amendment (collectively, the "Dongbu/TI TAAs") were unfair and unenforceable under federal and/or state laws, including U.S. antitrust laws.  Dongbu alleged both that the royalty rate exceeded permissible rates, and the provision requiring Dongbu to pay royalties so long as it used TI's technology was unfair.  Dongbu also alleged that the royalty obligation violated the laws of Korea.

56. Despite continuing to use TI's technologies in its manufacturing process, Dongbu demanded TI reduce the royalty percentage under the Dongbu/TI TAAs by more than half, and impose a limitation on the payment period.

57. TI denied Dongbu's request, explaining that TI fully performed its obligations under the contracts and that Dongbu agreed under the Dongbu/TI TAAs to pay the contractually-specified royalty percentage so long as it continued to use TI's technologies.

58. A few months later, Dongbu again approached TI and demanded TI lower the royalty rate set forth in the Dongbu/TI TAAs, despite the clear contract language.

59. TI once again denied Dongbu's demand, explaining that TI fully performed its obligations under the contracts and that Dongbu agreed under the Dongbu/TI TAAs to pay the contractually-specified royalty percentage so long as it continued to use TI's technologies.

60. In or around August 2016, Dongbu filed an Unfair Trade Activities Complaint with the Korean Fair Trade Commission ("KFTC") (the "KFTC Complaint"), in which Dongbu alleged, among other things, that the royalty provisions in the Dongbu/TI TAAs violate U.S. and Korean antitrust laws.

61. In its KFTC Complaint, Dongbu claims that the royalty provisions in the Dongbu/TI TAAs violate U.S. federal and state laws, including federal antitrust laws and the laws of Korea. Dongbu acknowledges that TI enabled it to enter the foundry business, but alleges that TI's technology has depreciated in value because it is either publicly available or widely used in the semiconductor industry. Based on this allegation, Dongbu contends that the requirement that Dongbu pay royalties to TI for so long as it uses TI's technology is unfair. In the alternative, Dongbu alleges that it has made improvements to TI's technology and that the provisions within the Dongbu/TI TAAs that obligate Dongbu to pay the same royalty rates are

unfair. As such, Dongbu claims that it is no longer required to comply with the royalty provisions in the Dongbu/TI TAAs.

62. TI and Dongbu entered mediation in November and December 2016 to resolve this dispute under the direction of an agency of the KFTC. In the mediation sessions, Dongbu reiterated its position that the royalty terms in the Dongbu/TI TAAs violate U.S. federal and state law and thus, the royalty rates it owes to TI should be reduced. When TI cited case law to Dongbu demonstrating that the royalty obligation was valid and enforceable, Dongbu denied that this binding law applied to the Dongbu/TI TAAs without further explanation.

63. Dongbu also stated in mediation that because it believes the confidentiality provisions in the Dongbu/TI TAAs will lapse in December 2017, its obligation to pay royalties will end in December 2017, notwithstanding its continued use of TI technology and the requirement of the Dongbu/TI TAAs that Dongbu pay royalties so long as it uses TI's technology.

64. In communications with TI during these mediation sessions, Dongbu threatened to no longer pay royalties to TI after December 2017.

65. The Dongbu/TI mediation sessions failed. As a result, Dongbu's KFTC Complaint was referred back to the KFTC on December 26, 2016. TI therefore seeks a judicial declaration regarding TI's rights under the Dongbu/TI TAAs to receive royalties so long as Dongbu continues to use its technology.

The Contractual Conciliation Process

66. In the technical assistance agreements, Dongbu and TI agreed that, in the event of a dispute, each would follow a detailed conciliation process to resolve their disputes on a good faith basis. The Phase 1 TAA, Phase 2 TAA, Phase 3 TAA, and MPA each contain identical conciliation provisions.

67. Under the conciliation process, in the event one party believes the other has breached the agreement, the non-breaching party shall promptly deliver written notification to the alleged breaching party setting out in reasonable detail and in clear and concise language the good faith basis for and the specifics of such breach.

68. Thereafter, either party can demand a meeting of the respective Dongbu/TI employees responsible for the TAA in order to resolve the dispute. If the dispute is not resolved at that meeting, it can be escalated to higher-level executives of Dongbu and TI.

69. Dongbu recently filed a KFTC Complaint alleging that the royalty payment provisions of the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, and the MPA were unfair.

70. However, Dongbu failed to follow the detailed conciliation process regarding the claims asserted in its KFTC Complaint, thereby breaching the conciliation provisions in the Phase 1 TAA, the Phase 2 TAA, the Phase 3 TAA, and the MPA.

## COUNT ONE

### DECLARATORY JUDGMENT

71. All of the foregoing averments are incorporated by reference.

72. The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, authorizes this Court to issue a declaratory judgment.

73. There is an actual and justiciable controversy between TI and Dongbu with respect to the parties' rights and obligations under the Dongbu/TI TAAs that is ripe for adjudication by the Court.

74. TI and Dongbu are parties to the Dongbu/TI TAAs, which are binding contracts between TI and Dongbu.

75. TI has fully performed under the Dongbu/TI TAAs, and all conditions, covenants, and promises required on its part to be performed, in accordance with the terms and conditions of

the Dongbu/TI TAAs, except to the extent that TI's obligations have been excused, released, or waived by Dongbu or by operation of law.

76. Despite TI's performance in full of its obligations under the Dongbu/TI TAAs, a dispute has arisen as to whether Dongbu's obligation to pay royalties while continuing to use TI's technology remains valid and enforceable.

77. TI has endeavored to resolve this dispute, but has been unsuccessful. Because Dongbu has not relented in its claims, the parties remain at an impasse necessitating the intervention of the Court to clarify the parties' rights and obligations under the royalty provisions in the Dongbu/TI TAAs.

78. Based on the facts and circumstances alleged herein, TI is entitled to a judicial declaration that the royalty provisions in the Dongbu/TI TAAs are valid, binding and enforceable.

**COUNT TWO**

BREACH OF CONTRACT – CONCILIATION PROVISION

79. All of the foregoing averments are incorporated by reference.

80. TI and Dongbu are parties to the Dongbu/TI TAAs, which are binding contracts between TI and Dongbu.

81. Under the Dongbu/TI TAAs, Dongbu is obligated to promptly deliver written notification to TI of an alleged breach, setting out in reasonable detail and in clear and concise language the good faith basis for and the specifics of such breach.

82. TI has fully performed under the Dongbu/TI TAAs, and all conditions, covenants, and promises required on its part to be performed, in accordance with the terms and conditions of the Dongbu/TI TAAs, except to the extent that TI's obligations have been excused, released, or waived by Dongbu or by operation of law.

83. Dongbu has breached the Dongbu/TI TAAs by filing the Unfair Trade Activities Complaint with the KFTC before completing the agreed-upon conciliation provision in the agreements, including by failing to provide TI with written notice of the alleged breach.

84. As a direct and proximate result of Dongbu's breach, TI has suffered and continues to suffer substantial damages, in an amount exceeding the jurisdictional minimum of this Court, and to be determined at trial. Such damages include, among other things, defense fees and costs incurred by TI for defending the KFTC action.

85. Pursuant to Texas Civil Practice & Remedies Code § 38.001, TI seeks to recover its reasonable and necessary attorneys' fees from Dongbu.

## PRAYER FOR RELIEF

Therefore, Plaintiff TI asks that Defendant Dongbu be cited to appear and answer, and prays for judgment on its original complaint in its favor in awarding a judicial declaration that the royalty provisions in the Dongbu/TI TAAs are valid, binding and enforceable, all damages warranted by the evidence, pre-judgment and post-judgment interest, attorneys' fees and costs, and all other relief to which it may be entitled.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), TI demands a trial by jury.

Date: December 27, 2016

Respectfully submitted,

*/s/ Hilda C. Galvan by permission Wes Hill*
Hilda C. Galvan
Lead Attorney
State Bar No. 00787512
hcgalvan@jonesday.com
Thomas D. York (*pro hac vice* application forthcoming)
State Bar No. 24095531
tdyork@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone:  (214) 220-3939
Facsimile:  (214) 969-5100

Wesley Hill
State Bar No. 24032294
E-mail: wh@wsfirm.com
Andrea L. Fair
State Bar No. 24078488
E-mail: andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)

ATTORNEYS FOR
TEXAS INSTRUMENTS INCORPORATED